NOTE:   This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3291

MICHAEL D. DANIEL,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

Joseph T. Mallon, Jr., Mallon and McCool, LLC, of Baltimore, Maryland, argued for petitioner.

Ronald G. Morgan, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent.  With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Mark A. Melnick, Assistant Director.

Appealed from:  United States Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3291

MICHAEL D. DANIEL,

Petitioner,

v.

DEPARTMENT OF VETERANS AFFAIRS,

Respondent.

_____

DECIDED: May 11, 2007

_____

Before BRYSON, Circuit Judge, PLAGER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

PER CURIAM.

Michael D. Daniel seeks review of the final decision of the Merit Systems Protection Board, Docket No. PH-0432-05-0280-I-2, in which the Board affirmed his removal for unacceptable performance. We affirm.

BACKGROUND

In December 2002, the Department of Veterans Affairs ("DVA") selected Mr. Daniel for a GS-13 position entitled Chief, Consumer Relations Service. His supervisor was Kathy Lockhart, Associate Director of Operations for the VA Maryland Healthcare System. At the end of Mr. Daniel's probationary period, Ms. Lockhart felt that his

performance was unsatisfactory. She concluded, however, that he should be retained to allow him to "address deficiencies and demonstrate fully successful performance during a Performance Improvement Plan (PIP)." Accordingly, on November 14, 2003, Mr. Daniel was placed on a PIP for 90 days. During that 90-day period, Ms. Lockhart conducted weekly meetings with Mr. Daniel, gave him extensive feedback on his work, and was generally available in person, by telephone, or by email. At the end of that period, Ms. Lockhart remained convinced that Mr. Daniel's performance was unsatisfactory. She was concerned, however, that she had not provided Mr. Daniel enough autonomy in light of his GS level and management position. She therefore extended the PIP to allow Mr. Daniel to "fly on his own." Ms. Lockhart remained available to Mr. Daniel, but she no longer conducted weekly meetings with him.

Because Mr. Daniel took a lengthy period of sick leave in early 2004, the PIP was further extended. After the conclusion of the PIP, Ms. Lockhart decided that Mr. Daniel was still not performing satisfactorily. Ms. Lockhart therefore recommended his removal, and Mr. Daniel was removed for unacceptable performance as of February 4, 2005. Mr. Daniel appealed his removal to the Board.

Following a four-day evidentiary hearing, the administrative judge who was assigned to the case issued an initial decision upholding Mr. Daniel's removal. The administrative judge found that Mr. Daniel "failed to meet [the] critical element of resource management in his performance standards," despite having a "very real opportunity to improve his performance." When the full Board denied Mr. Daniel's petition for review, the initial decision became the final decision of the Board.

DISCUSSION

Mr. Daniel argues that he was wrongfully removed because he completed every task assigned to him in an acceptable manner. Alternatively, he argues that even if he was not performing satisfactorily, he still should not have been removed because he was not given a reasonable opportunity to demonstrate acceptable performance.

1. As defined by Mr. Daniel's PIP, the critical element of resource management had two subsidiary standards: "Ensures competency of the [staff] to perform their jobs" and "Ensures allocated resources are used efficiently within the assigned budget." The Board found that Mr. Daniel failed the first standard because he did not satisfactorily update the position descriptions for several positions for which he was responsible, despite being told that he was required to perform that task in order to satisfy the first standard. The Board specifically listed the positions that had not been updated. Mr. Daniel points to evidence that he updated several position descriptions. That evidence, however, does not undermine the Board's finding that, despite Ms. Lockhart's conducting "an in-depth edit" of one of the position descriptions identified by the Board and supplying Mr. Daniel with written information regarding another of the identified positions, Mr. Daniel failed to satisfactorily complete those position description assignments. Accordingly, Mr. Daniel has not shown that the Board was wrong in concluding that he failed to satisfy the first standard.

The Board also found that Mr. Daniel failed to satisfy the second standard. As support for that finding, the Board noted that Mr. Daniel (1) failed to establish a patient escort service, despite being given a budget specifically for that purpose, (2) failed to provide continuous coverage for an information desk as required, and (3) failed to hire a

2006-3291                                3

Lead Patient Representative, thus wasting resources by requiring others to perform those functions in addition to their own job responsibilities. Although Mr. Daniel alleges that there was good reason for his failure to fill the Lead Patient Representative position, he does not address the other two bases for the Board's ruling. As such, Mr. Daniel has not shown the Board's finding as to the second standard to be in error. The Board's conclusion that Mr. Daniel's work was unsatisfactory therefore must be affirmed.

2. Mr. Daniel also argues that the DVA did not give him a "reasonable opportunity to demonstrate acceptable performance," as is required by 5 U.S.C. § 4302(b)(6). See Martin v. Fed. Aviation Admin., 795 F.2d 995, 997 (Fed. Cir. 1986). The Board found otherwise, holding that Mr. Daniel was afforded sufficient time to improve and was given sufficient assistance. The Board found that Ms. Lockhart provided him with extensive personal feedback on his work and was available to him in person, by telephone, or by email. That conclusion is supported by substantial evidence in the form of the testimony, documents, and emails referred to in the Board's opinion.

Mr. Daniel's primary argument on this issue is that Ms. Lockhart was unaware that he was performing satisfactorily because she was not in the office for much of the final two months of his PIP. That argument is unpersuasive because, as noted above, the evidence shows that Mr. Daniel did not perform his duties satisfactorily. With respect to Mr. Daniel's argument that some other agency official should have been given responsibility for supervising his PIP during those months, the testimony at the hearing indicated that, pursuant to agency policy, Ms. Lockhart continued to serve as

his immediate supervisor during that period. The evidence further supports the Board's conclusion that Ms. Lockhart was available to Mr. Daniel by telephone, email, or, when she was in the office, in person. There was therefore no need to assign another supervisor.

Mr. Daniel next argues that he was improperly assigned additional tasks when his PIP was extended. However, he has not alleged that those tasks were outside his job responsibility or that he was afforded insufficient time to complete all the tasks assigned to him. Accordingly, he has not shown that the new tasks denied him the ability to demonstrate acceptable performance.

Mr. Daniel notes that the agency denied his general request for formal training and argues that doing so was contrary to agency policy. At the Board hearing, a DVA human resources specialist testified that she would generally expect an employee on a PIP to bring up any training that he or she felt was needed. The specialist agreed that if an employee expressed a general desire for training, it would normally be appropriate for the supervisor to follow up with the employee regarding what specific training the employee desired. That testimony falls short of demonstrating that the DVA had a policy requiring a supervisor to recommend training opportunities in response to a general request for training. Nor was there any other testimony or written evidence of any DVA policy or general practice of that nature.

Mr. Daniel next argues that there was a period of almost two months following the first extension of his PIP during which Ms. Lockhart did not meet with him. Mr. Daniel does not indicate how the lack of in-person meetings prejudiced him, however, nor does he contend that he sought meetings with Ms. Lockhart during that period.

Additionally, Mr. Daniel was granted an extension on his PIP in part to provide him with more autonomy. Ms. Lockhart's decision not to meet with him regularly is consistent with that purpose.

Finally, Mr. Daniel argues that Ms. Lockhart prejudged him and "had no intention of providing him with a reasonable opportunity to demonstrate acceptable performance." As support for that proposition, he first claims that Ms. Lockhart was "prepared" to remove him at the end of the first 90 days of his PIP. While that is undoubtedly true, considering that she rated his performance as unacceptable at that time, it does not demonstrate that she prejudged him. As pointed out by the Board, the DVA could have removed Mr. Daniel at the end of his probationary period or after the initial term of his PIP. Placing Mr. Daniel on a PIP and later extending it could only work in Mr. Daniel's favor. Such actions indicate, if anything, that Ms. Lockhart was interested in giving Mr. Daniel a further opportunity to demonstrate acceptable performance. Mr. Daniel also argues that, sometime before June 2004, Ms. Lockhart indicated to her assistant that she "intended" to remove him. The testimony cited in support of that proposition, however, indicates only that Ms. Lockhart noted Mr. Daniel's lack of progress and that Ms. Lockhart anticipated the need to remove him. That evidence does not show that Ms. Lockhart denied Mr. Daniel a reasonable opportunity to demonstrate acceptable performance. Regardless of Ms. Lockhart's expectations, the evidence showed that Mr. Daniel failed to perform satisfactorily after being given a reasonable opportunity to do so.

In sum, because substantial evidence supports the Board's decision, we affirm the decision sustaining the DVA's removal action.